**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PAINTERS AND FLOORCOVERERS JOINT COMMITTEE; EMPLOYEE PAINTERS' TRUST; PAINTERS, GLAZIERS AND FLOORCOVERERS JOINT APPRENTICESHIP AND JOURNEYMAN TRAINING TRUST; PAINTERS INDUSTRY PROMOTION FUND; PAINTERS JOINT COMMITTEE INDUSTRY PROMOTION FUND; PAINTERS ORGANIZING FUND; SOUTHERN NEVADA PAINTERS AND DECORATORS AND GLAZIERS LABOR MANAGEMENT COOPERATION COMMITTEE TRUST; PAINTERS, GLAZIERS AND FLOORCOVERERS SAFETY TRAINING TRUST FUND, each acting by and through their designated fiduciaries John Smirk and Thomas Pfundstein; INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES INDUSTRY PENSION TRUST FUND, acting by and through its designated fiduciary, Gary J. Meyers, | Case No. 2:13-cv-00146-APG-CWH  **ORDER ON MOTIONS FOR SUMMARY JUDGMENT**  (Dkt. ##57, 61, 72) |

Plaintiffs/Counter-
Defendants,

v.

MICHAEL R. BELLO, an individual; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation; COMMITTED COMPANIES, LLC, a Nevada limited liability company; STEVE HUNTINGTON, an individual; JOHN DOES I-XX, inclusive; and ROE ENTITIES I-XX, inclusive.

Defendants.

Plaintiffs are trusts seeking to recover contributions allegedly owed to them by Walldesign, Inc. under a union contract. Walldesign is in bankruptcy, so the trusts filed this lawsuit against various other individuals and companies. Three parties remain, including Michael R. Bello, Walldesign's president; Steve Huntington, Walldesign's CFO; and American Contractors Indemnity Company ("ACIC"), a bond issuer allegedly liable for Walldesign's debts.

Plaintiffs assert different claims against each defendant, but each claim merely provides a different legal theory for why defendants should be liable for contributions Walldesign owed to the trusts. Plaintiffs claim Bello is personally liable for contributions under a corporate liability provision in one of the trusts—the Employee Painters' Trust—and that he also breached his fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs bring only an ERISA fiduciary claim against Huntington. Finally, plaintiffs' single claim against ACIC is that it is liable for Walldesign's owed contributions under a contractor's bond.

Plaintiffs move for summary judgment on all of their claims. (Dkt. #57.) Defendants Bello and Huntington also move for summary judgment that they are not liable to plaintiffs. (Dkt. ##61, 72.)

I find there are genuine issues of material fact as to whether Walldesign owed contributions to the trusts and whether defendants are liable for all owed contributions. Therefore, no party is entitled to summary judgment at this time. But I do find that, under the corporate officer liability provision, Bello will be liable for any contributions Walldesign is found to owe to the Employee Painters' Trust. I also find that Bello and Huntington breached their ERISA fiduciary duties to some of the trusts and will therefore be liable if contributions are owed to those trusts. Finally, Plaintiffs are not entitled to summary judgment against ACIC because plaintiffs have not yet proved if, and to what extent, Walldesign owed contributions to the trusts.

## I.   BACKGROUND

Plaintiffs are trusts and beneficiaries of a collective bargaining agreement ("CBA") between Walldesign and the International Union of Painters & Allied Trades, District Council 15, Local Union 159.[1] Under the CBA (and an accompanying memorandum of understanding), Walldesign had to make contributions to the trusts for every hour it employed union members on certain commercial projects and multi-family homes.[2] Single family homes and certain other types of projects were excluded.[3]

Walldesign filed for bankruptcy in 2012.[4] Plaintiffs audited Walldesign's records and concluded that Walldesign had failed to report 17,331.4 hours of work for which contributions were due to the trusts, and that roughly $138,000.00 was then owed to the trusts.[5] Plaintiffs allege that, after all payments and costs are accounted for, Walldesign now owes the trusts $127,569.60.[6]

Bello was Walldesign's president and Huntington was Walldesign's chief financial officer. Bello and Huntington allege that another Walldesign employee handled contributions,

---

[1] (Dkt. ##56-4; 56-5.)

[2] (Dkt. #56-4.)

[3] (*Id.*)

[4] (Dkt. #57-7.)

[5] (Dkt. ##56-7, 57-8; 57-9.)

[6] (Dkt. #57-8.)

not them.

Walldesign purchased bonds from American Contractors Indemnity Company to comply with Nevada licensing requirements.[7]  Plaintiffs seek to collect on these bonds for contributions Walldesign allegedly owed.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8]  For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[9]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[11]  She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[12]

---

[7] (Dkt. #57-5.)

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[9] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[11] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[12] *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

A party must support or refute the assertion of a fact with admissible evidence.[13] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial.[14] Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

### III.     DISCUSSION

#### A.     Whether Walldesign owed contributions to the trusts

All of plaintiffs' claims are predicated on Walldesign owing contributions to the trusts.[15] If Walldesign did not owe any contributions, all of plaintiffs' claims fail. On plaintiffs' motion for summary judgment, they have the burden of proving Walldesign owed contributions because it is a predicate of each of their claims. On defendants' motion for summary judgment directed at this same issue, the defendants have the burden of proving no contributions were owed.

Plaintiffs do not meet their burden. The parties agree that only certain types of construction projects required contributions under the CBA. In support of their motion for summary judgment, Plaintiffs rely on an audit of Walldesign's records to prove its projects fell under the CBA. But neither this audit, nor any other evidence provided in support of plaintiffs'

---

[13] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*, 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[14] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

[15] Plaintiffs' operative complaint lists claims for (1) personal liability for breach of the CBA in failing to pay owed contributions, (2) breach of fiduciary duty for failing to pay owed contributions, (3) vicarious liability for Walldesign's owed contributions, and (4) demand for relief on bonds to pay for Walldesign's owed contributions. (Dkt. #47.)

motion, constitutes admissible evidence that Walldesign's projects fell under the CBA.[16] The auditor merely provides his opinion that contributions were owed, which does not suffice.[17] Moreover, even if plaintiffs had met their burden—making all inferences in favor of the defendants—Bello's statement that Walldesign was not working on projects that fell under the CBA creates a triable issue of fact.[18]

Plaintiffs also argue that because defendants have not made a line-for-line challenge to the auditor's findings, under *Trustees of the Operating Engineers Pension Trust v. O'Dell*, 682 F.Supp. 1506, 1512 (D. Nev. 1988), plaintiffs' audit automatically proves contributions were owed. First, *O'Dell* is not controlling authority and plaintiffs fail to provide any additional authority in support of this argument. Second, in *O'Dell* the court found plaintiffs had met their summary judgment burden to prove contributions were owed—which I have not found here.[19] Finally, the defendant in *O'Dell* argued he was not liable for certain contributions because his

---

[16] Even when offered by expert witnesses, conclusory opinions without an identified basis in specific facts cannot be the basis of summary judgment. *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 699–701 (9th Cir.1981).

[17] Plaintiffs raise additional evidence in *response to defendants' motions*, but I need not consider that evidence when deciding whether plaintiffs' met their burden regarding their own motion—which relies on the audit alone. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir.2010). Even looking to the evidence plaintiffs raise in their response, the auditor apparently relied on hearsay Google Street View documents to make his determinations. (Dkt. #84-2.) Plaintiffs fail to establish the auditor is an expert who may rely on hearsay documents; they also fail to establish that it is proper for an auditor to rely on documents such as these when determining whether a company owes contributions to an ERISA trust.

[18] (Dkt. #61-1 at 10.) Plaintiffs argue Bello lacked personal knowledge to opine on whether Walldesign worked on only single family homes. Plaintiffs point to Bello's statement that his "understanding was those other projects we were doing was (sic) single family home[s]." (*Id.*) They argue that this statement indicates Bello was speaking from his "understanding" based on what others had told him, and it is thus hearsay. But reading the rest of Bello's deposition, and making inferences in his favor for the purposes of plaintiffs' summary judgment motion, Bello appears to have stated that his "understanding" comment was directed to his understanding of the CBA terms, not to the nature of Walldesign's projects.

[19] *O'Dell,* 682 F.Supp. at 1513 (D. Nev. 1988).

employees had split their time between covered and non-covered work—an argument the court found to be foreclosed by controlling case law.[20]  Here, defendants challenge the fundamental legal and factual question of whether Walldesign's projects fell under the CBA.  It appears likely defendants conducted at least some covered work.  But plaintiffs have not met their summary judgment burden to prove this fact.[21]

Defendants, in turn, also fail to meet their burden.  Defendants rely on Bello's single statement that Walldesign only worked on single family homes excluded from the CBA.[22]  In their opposition, plaintiffs point to Walldesign's business records which indicate it conducted work on much more than just single family homes—including work on the courthouse in which I sit.[23]

Therefore, I find there are genuine issues of material fact as to if, and to what extent, Walldesign owed contributions to the trusts.

**B.     Plaintiffs' personal liability claim against Bello**

Plaintiffs argue Bello is personally liable for any contributions owed to the Employee Painters' Trust because this trust contains a corporate officer liability provision.  The Employee Painters' Trust states that if a company fails to make contributions, "the President, the Treasurer,

---

[20] *Trustees of the Operating Engineers Pension Trust v. O'Dell*, 682 F.Supp. 1506, 1512 (D. Nev. 1988)

[21] Plaintiffs also direct me to a National Labor Relations Board decision in which Walldesign apparently admitted the allegations in a complaint—one of which was that Walldesign conducted work covered by the CBA.  Plaintiffs do not raise issue preclusion; they merely wish for me to take judicial notice of the case.  Even if I were to take judicial notice of the NLRB's decision, plaintiffs provide no authority to suggest that defendants are bound to Walldesign's admissions before the NLRB.  Further, it does not appear the issue of CBA coverage was litigated in the NLRB case. (Dkt. #84-8.)

[22] (Dkt. #61-1 at 10.)

[23] (Dkt. ##84-4; 84-8.)

and any other corporate officer who is responsible for payment of contributions by the corporation to the Trust fund shall be each individually liable."[24]  Bello argues that the Employee Painters' Trust only creates personal liability if a president is "responsible for payment of contributions by the corporation to the Trust."  In other words, Bello argues he must be both a president *and* responsible for contributions to be liable under the trust.

"[W]hen clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language."[25]  Not only have courts consistently held corporate officers liable when considering identical language in other trust agreements,[26] Bello's interpretation does not comport with a plain reading of the trust's language.  Nothing in the trust's language requires the president to be responsible for contributions to be liable.  The trust's language unambiguously states that the "the President . . . shall be . . . individually liable."  There would be no need to list the President and Treasurer separately if they nonetheless needed to be responsible for contribution decisions to be liable.  Further, Bello, as Walldesign's president and sole corporate officer, was ultimately responsible for employees tasked with keeping track of contributions.  Bello is liable for any contributions that are owed to the Employee Painters' Trust.

**C.    Plaintiffs' ERISA fiduciary duty claims against Huntington and Bello**

Bello and Huntington argue they are not ERISA fiduciaries.  ERISA fiduciary duties apply only to individuals with discretionary authority over "plan assets."[27]  An ERISA fiduciary must ensure that "assets of the plan never inure to the benefit of the employer and shall be held

---

[24] (Dkt. #57-3.)

[25] *Irwin v. Carpenters Health & Welfare Trust Fund,* 745 F.2d 553, 556 (9th Cir. 1984)

[26] *See, e.g., id.*; *Employee Painters' Trust v. J & B Finishes,* 77 F.3d 1188 (9th Cir. 1996); *Employee Painters' Trust Health & Welfare Fund v. Seattle Structures, LLC*, 2012 WL 4511625 (W.D. Wash. Oct. 2, 2012).

[27] 29 U.S.C. § 1002(21)(A).

Page 8 of 13

for the exclusive purposes of providing benefits to participants in the plan."[28] Any person who breaches a fiduciary obligation "shall be personally liable to make good . . . any losses to the plan."[29] Plaintiffs must prove both that (1) "plan assets" are at issue and (2) that defendants had authority or discretion over those plan assets.[30]

### i.   Whether "plan assets" are at issue

ERISA does not define "plan assets," but case law has clarified that, generally, plan assets include only funds *actually paid* into a trust.[31] Some courts have recognized an exception if a trust agreement expressly and clearly states that its assets include owed, but not yet paid, contributions.[32] In that situation, fiduciary duties can attach to a company's general business funds in the amount that is owed to the trust.[33] The following include definitions in trusts that courts have found to trigger the exception: plan assets defined as "due and owing" sums, plan assets defined as "sums that shall be paid," and plan assets defined as sums that the employer is "liable for."[34]

---

[28] 29 U.S.C. § 1103(c)(1).

[29] 29 U.S.C. §1109(a).

[30] 29 U.S.C. § 1002(21)(A).

[31] *Cline v. Indus. Maint. Eng'g & Contracting Co.,* 200 F.3d 1223, 1234 (9th Cir. 2000).

[32] *See, e.g., Trs. of the Constr. Ind. and Laborers Health and Welfare Trust v. Vasquez,* 2011 WL 4549228 (D. Nev. Sept. 29, 2011); *Rahm v. Halpin (In re Halpin)*, 566 F.3d 286, 290 (2d. Cir. 2009); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003 (requiring trust language to be specific and clear).

[33] *Trs. Of the Teamsters Local 631 Security Fund for S. Nev. v. Polson,* 2012 WL 5378175, at *2 (D. Nev. Oct. 30, 2012) (collecting cases).

[34] *Id.*

The largest trust at issue in this case, the Employee Painters' Trust, does not contain express language clearly incorporating unpaid contributions.[35] This trust defines contributions as "the payments required by a collective bargaining agreement or a special agreement *which are made by an Employer* for the purpose of providing benefits to employees covered by said agreement."[36] This trust specifically defines contributions as those actually "made by the Employer." As to the Employee Painters' Trust, I find unpaid contributions are not "plan assets."

The other trusts contain express language specifically defining "plan assets" to include unpaid contributions. I find any unpaid contributions to these trusts will constitute plan assets for purposes of ERISA fiduciary duties. The trusts and relevant language include:

- The trust agreement of the Painters Joint Committee says "Contributions owed to the Fund are Fund assets, *whether or not paid*, and payment thereof to the Fund is the fiduciary obligation of the decision-maker of each Employer."[37]

- The agreements of the Painters, Glaziers and Floorcoverers Joint Apprenticeship and Journeyman Training Trust and the Painters, Glaziers and Floorcoverers Safety Training Trust Fund both declare "All Contributions required to be remitted to the Fund by an Individual Employer are deemed Fund assets *from the date of accrual*."[38]

- The Declaration of Trust for the Southern Nevada Painters and Decorators and Glaziers Labor-Management Cooperation Committee Trust declares "The Fund as established by this Trust Agreement shall consist of Contributions, all investments made and held in Trust and all income and returns of any kind whatsoever therefrom, *both received and accrued*. . . ."[39]

---

[35] This trust agreement defines assets as "payment required by a collective bargaining agreement . . . *which are made* by an Employer." (Dkt. #72 at 8.) (emphasis added).

[36] (Dkt. #57-3 (emphasis added).) Plaintiffs quote part of this sentence ("required by collective bargaining agreement") to argue that the trust includes unpaid contributions. But the end of the sentence clarifies only contributions "made by an Employer" are included. At the least, I find the trust does not *clearly and expressly* include unpaid contributions.

[37] (*Id*. (emphasis added).)

[38] (*Id*. (emphasis added).)

[39] (*Id*. (emphasis added).)

- The Restated Agreement and Declaration of Trust of the Painters and Allied Trades Labor Management Cooperation Initiative says "'Trust' means this Trust, including the monies and other assets held under this Agreement and Declaration of Trust, *as well as future contributions* provided for under collective bargaining agreements or otherwise."[40]

- The Declaration of Trust of the International Painters and Allied Trades Industry Pension Plan says "Contributions by Employers to the Trust or Plan are plan assets and are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust or in contributions owed . . . *but not yet paid* and no Plan assets will revert to the Employers."[41]

I find these trusts define their assets to include unpaid contributions. Therefore unpaid contributions to these trusts are plan assets to which ERISA fiduciary duties may apply.

But, as explained above, unpaid contributions to the Employee Painters' Trust are not plan assets. Therefore no fiduciary duties may apply to those owed funds.

**ii.      Whether Bello and Huntington had authority over plan assets**

A "person is a fiduciary with respect to a plan to the extent" that he or she "exercises any authority or control respecting management or disposition of [plan] assets."[42] "[C]orporate officers can be personally liable as fiduciaries based solely on 'their conduct and authority with respect to ERISA plans' even if that same conduct was done on behalf of the corporate entity itself."[43]

Bello argues he had no authority over plan assets because he delegated responsibility for making ERISA contributions to his employees. But the "plan assets" in this case are unpaid

---

[40] (*Id.* (emphasis added).)

[41] (*Id.* (emphasis added).)

[42] 29 U.S.C. § 1002(21)(A)(i); *IT Corp. v. Gen. Am. Life Ins.,* 107 F.3d 1415, 1421 (9th Cir. 1997).

[43] *Trs. of the So. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F.Supp.2d 1156, 1168 (C.D. Cal. 2006).

contributions—and plaintiffs have clearly shown Bello controlled the assets Walldesign owed to the trusts. He may have delegated responsibility over contributions actually made. But as Walldesign's president, Bello had discretionary authority over Walldesign's owed debts and general business assets. And Bello decided which Walldesign creditors would be paid and in what order.[44] Other courts faced with this situation have similarly held officers like Bello liable as ERISA fiduciaries of unpaid contributions.[45] I find Bello is liable as an ERISA fiduciary as to unpaid contributions owed, if any, to all of the trusts other than the Employee Painters' Trust.

Huntington argues he had insufficient authority over unpaid contributions because Bello had the ultimate decision-making authority. But ERISA imposes fiduciary obligations on an individual with any authority or control respecting management of plan assets.[46] Plaintiffs have provided unrebutted evidence establishing that Huntington, as CFO, exerted substantial authority and control over Walldesign's assets. For example, Huntington had the authority to authorize payments for Walldesign, he handled audits, he reviewed Walldesign's billing, he made decisions with Bello regarding creditor payments, he had authority to sign contracts on behalf of Walldesign, and he helped negotiate the CBA and accompanying memorandum of understanding.[47] As CFO with wide authority to make payments to creditors, Huntington certainly had some authority over Walldesign's owed contributions. I therefore find that Huntington is also a fiduciary as to unpaid contributions owed, if any, to all of the trusts other than the Employee Painters' Trust.

---

[44] (Dkt. #61-1 at 10-12.)

[45] *See, e.g., Trs. of the Constr. Ind. and Laborers Health and Welfare Trust v. Vasquez,* 2011 WL 4549228 (corporate officers were ERISA fiduciaries over unpaid contributions because they had authority to pay creditors).

[46] 29 U.S.C. § 1002(21)(A)(i)

[47] (Dkt. #61-1 at 7-15.)

### D. Plaintiffs' claim against ACIC

Plaintiffs seek to collect on the bonds ACIC issued to Walldesign. But because I have determined there are genuine disputes of material fact as to if, and to what extent, Walldesign owed money to the trusts, at this point there is no basis to grant summary judgment against ACIC.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that plaintiffs' motion for summary judgment (Dkt. #57) and defendants' motions for summary judgment (Dkt. ##61, 72) are GRANTED in part and DENIED in part. Neither party is entitled to summary judgment on the issue of whether Walldesign, Inc. owed contribution to the plaintiffs' trusts. Defendant Michael Bello is personally liable to the Employee Painters' Trust for any contributions Walldesign owed to that trust. Both defendant Michael Bello and Steven Huntington are fiduciaries as to the plaintiffs' trusts other than the Employee Painters' Trust. Neither defendant is liable for fiduciary obligations to the Employee Painters' Trust. Plaintiffs are not entitled to summary judgment against American Contractors Indemnity Company.

DATED this 2nd day of March 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE